The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and oral arguments before the Full Commission.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with some minor technical modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
 ***********
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer on 21 April 1998.
3. On 21 April 1998 defendant was self-insured for workers compensation purposes with Key Risk Management Services as the servicing agent.
4. Plaintiffs average weekly wage on 21 April 1998 was $451.23, yielding a compensation rate of $300.83 per week.
5. Plaintiffs medical records regarding this claim are admitted into evidence as Exhibit A attached to the pre-trial agreement.
6. The North Carolina Criminal Justice Education and Training Commission forms, plaintiffs medical history, plaintiffs medical examination report, and a document containing a list of plaintiffs job functions are admitted into evidence as Stipulated Exhibit #2.
7. Plaintiffs report of injury form is admitted into evidence as Stipulated Exhibit #3.
8. Statements from George Bowden, Rodney Dyer, Donnie Gordon, and Monroe Porter are admitted into evidence as Stipulated Exhibit #4.
9. Plaintiffs personnel records are admitted into evidence as Stipulated Exhibit #5.
10. A 30 April 1998 letter from J. Lassiter to Troy Medical Service containing a list of plaintiffs job functions is admitted into evidence as Stipulated Exhibit #6.
11. The Industrial Commission Forms 18, 19, 61, 33 and 33R in this case are admitted into evidence as Stipulated Exhibit #7.
12. Defendants Interrogatories and Request for Production and plaintiffs answers are admitted into evidence as Stipulated Exhibit #8.
13. Plaintiffs 27 April 1998 recorded statement is admitted into evidence as Stipulated Exhibit #9.
14. The issues to be determined by the Commission are whether plaintiff sustained a compensable injury by accident on 21 April 1998 and to what benefits, if any, is he entitled.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. On 21 April 1998 plaintiff was a 26-year old male employed by defendant as a correctional officer at the Southern Correctional Institute in Troy, North Carolina. Plaintiff had been employed in this capacity since February 1997. Plaintiffs duties included maintaining custody and control of inmates inside and outside the housing units, patrolling the premises, and watching inmates from a tower.
2. Plaintiff was also a member of the Prison Emergency Response Team (PERT). This teams duties included capturing escaped inmates and controlling riots. As a member of this team plaintiff had to undergo additional training in firearms, tactics, and self-defense. Plaintiff also had to pass an additional physical examination, complete a timed 2-mile run, undergo extra push-up and sit-up tests, and participate in special monthly training sessions away from the prison.
3. On 21 April 1998 plaintiff and the other members of PERT traveled from the Southern Correctional Institution to an old Merita Bread plant in Fayetteville for hostage negotiation training. All team members rode in a prison passenger van.
4. During the PERT training on 21 April 1998, plaintiff wore a bulletproof vest with his gun drawn and performed several scenarios to train and practice actions to take in a hostage situation. Most of plaintiffs movements in the building were in a squatting or kneeling position. Each scenario lasted 15 to 20 minutes and plaintiff practiced several times. In one scenario plaintiff jumped off the top of a locker but did not experience any pain or discomfort in his knees during the entire training. Plaintiff also spent half the day in a classroom setting receiving instruction.
5. Plaintiffs training concluded around 4:00 p.m. and the team returned to Southern Correctional Institution by approximately 6:00 p.m. During the ride back, plaintiff sat in the first passenger seat behind the driver. Plaintiffs knees were up against a cage and he had approximately 12 to 18 inches of foot and legroom.
6. When the vehicle arrived at the Southern Correctional Institution, plaintiff exited the vehicle, stepped out and immediately fell toward the ground. Plaintiffs left knee did not support him. A co-worker, Officer Dyer, supported plaintiff so that he did not actually hit the ground. Plaintiff did not slip, trip or fall. The ground and the van floor were smooth, even surfaces. Plaintiff did not twist his knee. Plaintiffs left knee began to hurt after this incident.
7. Plaintiff informed Donnie Gordon, the charge officer, of his left knee pain. Later that evening while at home plaintiffs left leg felt sore and stiff and he walked around in his backyard to try to improve his symptoms. While walking, plaintiffs left leg gave way on four occasions and plaintiff fell.
8. By the morning of 22 April 1998 plaintiffs left leg had not improved and he sought treatment from the VA Hospital in Fayetteville. Later that day plaintiff prepared a State of North Carolina Department of Correction Employees Initial Report of Injury Form, reporting injuries to his left leg and foot.
9. Defendant arranged for plaintiff to be seen at Stanly Memorial Hospital in Albemarle. Plaintiffs symptoms did not improve and he eventually sought treatment from Dr. Neil Conti, an orthopedist, on 2 July 1998. An examination revealed plaintiff had tenderness along the medial joint line of the left knee. Dr. Conti diagnosed plaintiff with a medial minuscule tear and chronic ankle sprain.
10. On 22 July 1998 Dr. Conti performed arthoscopic surgery on plaintiffs left knee. During the surgery Dr. Conti repaired tears in plaintiffs medial and lateral menisci.
11. Dr. Conti treated plaintiff following surgery. By October 1998 plaintiff was not experiencing any left knee pain, but he did still have some left foot and left ankle pain. A left foot bone scan indicated arthritis and a bone spur formation. Plaintiff did not seek treatment from Dr. Conti again until 26 April 1999.
12. In January 1999, plaintiff returned to the VA Hospital complaining of left knee and left ankle pain. Dr. Meyer recommended follow-up treatment but plaintiff did not return.
13. Plaintiff had knee problems prior to 21 April 1998. Plaintiff sustained an ACL injury to his right knee and had surgery on his right knee in 1992. Beginning in October 1995, plaintiff was seen at the VA hospital complaining of left knee pain. Plaintiff reported to the hospital numerous times subsequently with left knee pain. A December 1996 MRI of plaintiffs left knee showed possible posterior horn lateral meniscus fraying.
14. When plaintiff began work with defendant in 1997, he passed several physical examinations. Plaintiffs prior knee problems did not prevent plaintiff from performing the usual strenuous job requirements of a correctional officer or as a member of PERT.
15. Although plaintiffs physicians agree some sort of trauma precipitated the tears in plaintiffs meniscus, and that the fatigue resulting from strenuous all-day PERT training contributed to his condition, no "accident within the meaning of the North Carolina Workers Compensation Act occurred. Plaintiff did not experience any knee pain during the PERT training in Fayetteville on 21 April 1998. Plaintiffs first pain occurred when he stepped out of the van after arriving in Montgomery County. Plaintiff did not slip, trip or fall. Plaintiff simply stepped out and his leg did not support him. Plaintiff did not experience any twisting in his leg.
16. Plaintiffs participation in PERT training was within his normal duties as a correctional officer. Although this training was rigorous and strenuous, it was normal. Plaintiff suffered no cognizable accident outside his normal duties while engaged in this training.
17. Plaintiffs last workday for defendant was 21 April 1998. In February 1999, plaintiff began self-employment in an internet business earning approximately $1,200 per month.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 21 April 1998 plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant. Under the Workers Compensation Act, the terms "injury and "accident are not synonymous, and the mere fact of an injury does not, of itself, establish the fact of an accident. Reams v.Burlington Industries 42 N.C. App. 54, 255 S.E.2d 586 (1979). For an injury to result by accident, there must be an interruption of the work routine and the introduction of unusual conditions likely to result in unexpected consequences. Harding v. Thomas HowardCompany, 256 N.C. 427, 124 S.E.2d 109 (1962).
2. In this case, plaintiff was participating in his normal job duties. Although plaintiffs PERT training was strenuous, this was a regular part of his employment and plaintiffs injury was not an accident within the meaning of the Workers Compensation Act. N.C. Gen. Stat. 97-2(6). Swindell v. Davis Boatworks, Inc.,78 N.C. App. 393, 337 S.E.2d 592 (1985).
3. Plaintiff is therefore entitled to no compensation under the provisions of the North Carolina Workers Compensation Act. N.C. Gen. Stat. 97-2(6).
 ***********
Based upon the foregoing findings of facts and conclusions of law, the Full Commission enters the following
 ORDER
1. Under the law, plaintiffs claim must be, and the same is, DENIED.
2. Each side shall bear its own costs.
This the ___ day of August, 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_______________ DIANNE C. SELLERS COMMISSIONER
S/___________________ BERNADINE S. BALLANCE COMMISSIONER